FILED - GR
October 22, 2008 11:29 AM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___rmw___/_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN,
SOUTHERN DIVISION

Robert Carlson, Personal Representative
Of the Estate of Craig Carlson,

    Plaintiff,

v

SHERIFF SCOTT FEWINS, individually
and officially, and GRAND TRAVERSE COUNTY
and the EMERGENCY RESPONSE TEAM,
a paramilitary "Swat" team of unknown
provenance commanded by Scott Fewins,

    Defendants.

File No. **1:08-cv-991**
**Paul L Maloney**
**Chief U.S. District Judge**

---

Grant W. Parsons (P38214)
Parsons Ringsmuth PLC
Attorney for Plaintiff
520 South Union Street; P.O. Box 1710
Traverse City, MI 49685-1710
(231) 929-3113

---

## COMPLAINT AND JURY DEMAND

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

Plaintiff's decedent, Craig Carlson, called "911" for mental health assistance. His family also called "911" to advise that decedent was suicidal and might provoke "suicide by cop". A SWAT team of 60 officers surrounded Carlson's residence where, after an 11 hour non-violent stand-off, Plaintiff's decedent, Craig Carlson, was shot to death by one of the snipers.

At the time of death, Mr. Carlson was inside his own home, and the police sniper was hidden in the trees outside. There were no exigent circumstances; law enforcement personnel neither obtained a warrant nor summoned mental health resources. Mr. Carlson harmed no one; he stated no intent no harm officers.

During the stand-off, Carlson's family rushed to the scene to rescue him but were prevented from any involvement; telephone communication and power to Carlson's residence were shut off. Untrained officers yell at Carlson until he became agitated; 28 explosive gas rockets were launched against and into his house; every window in the house was shattered by gas rockets; the siding on the house was shattered by gas rocket fire. Carlson requested access to news media but was denied. Immediately prior to the killing, Carlson stated his intention to file civil lawsuits against the SWAT team for damaging his house.

As he spoke to officers from inside his house, Carlson held a loaded gun, but the gun was on "safe", Carlson's finger was not on the trigger and the gun was not being pointed. Mr. Carlson had no history of anti-police behavior, and to the contrary, was known to law enforcement personnel for seeking help for mental health. During and after the incident, evidence and information was destroyed.

## PARTIES JURISDICTION & VENUE

1. Plaintiff Robert Carlson is the duly appointed Personal Representative of the Estate of Craig Carlson, his decedent brother.

2. Sheriff Scott Fewins is a Constitutional and statutory Sheriff under the laws of the State of Michigan with final policy making authority for Grand Traverse County, a municipal corporation.

3. The Emergency Response Team is a paramilitary "Swat Team" type organization whose provenance is unknown, and is comprised of various regional law enforcement agencies under the command of Grand Traverse County Sheriff Scott

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

2

Fewins at the relevant time.

4. This action is brought pursuant to, *inter alia* 42 USC 1983 and/or Michigan governmental liability law, and the United States Constitution, and this action is otherwise within the jurisdiction of this Court, and venue of this action is proper.

## GENERAL ALLEGATIONS

5. Within weeks before his death, Craig Carlson successfully summoned law enforcement officers to his house, on one or two occasions, to speak with him due to his deteriorating health mental.

    a. He was medicating with prescription drugs for a chronic, mal-union fracture;

    b. He accidentally overdosed on prescription medications, and was placed on a mechanical ventilator for two days;

    c. The day he was discharged from the hospital, he was examined for mental health problems, and was released, whereupon he totaled his vehicle against a utility pole, fracturing his sternum;

    d. He was medicating for depression.

6. On November 9, 2007, at 8:30 p.m., Carlson called "911" to summon officers to talk at his house, again for poor mental health.

7. Carlson's request for help on November 9 was denied by "911".

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

Law Office
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

3

8. At about the same time, Carlson's family called "911" and advised that Carlson was despondent and had weapons inside his house and might provoke "suicide by cop", due to his despondency.

9. "911" dispatched officers with "reference a suicidal subject" to the Carlson residence, a well tended bi-level ranch home outside rural Interlochen, Michigan.

10. Four law enforcement personnel arrived at the scene at approximately 10:07 p.m., unbeknownst to Carlson, who was inside the house.

11. Upon arrival, one Deputy McManus secreted himself behind a tree in Carlson's back yard.

12. A short time later, Deputy McManus heard what he described in a post-incident statement as "a loud bang ... it appeared that Carlson was shooting at random, and his rounds could easily have been headed in my direction."

13. It would later be determined by Brian Donnelly, Kalkaska County Prosecuting Attorney, acting as Special Investigator by the designation of State Attorney General Mike Cox, that despite McManus' use of the word "rounds", Carlson had not fired "rounds"; in fact, he fired only the one shot during the entire incident, which would continue from 10:07 p.m. on November 9 through 9:20 a.m. on November 10.

14. At no point during this entire incident did Craig Carlson discharge any weapon in the direction of a police officer, or with the intention of either scaring or harming a police officer.

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

4

15. A law enforcement entity called the Emergency Response Team (ERT) was activated.

    a. 60 ERT members surrounded Carlson in his house.

    b. The ERT members were armed with high-powered assault weaponry, gun-scopes, gas rockets, launchers, building entry equipment, special communication devices, night vision and radio equipment.

    c. Communications concerning the activities of the ERT was reported and/or logged in detail at the "911" office between 8:30 p.m. on November 9, and 7:24 a.m. on November 10.

16. Grand Traverse County Sheriff Scott Fewins was in command of the ERT during this incident.

17. The Emergency Response Team under Fewins was un-trained, mis-trained, and was instructed to follow unconstitutional practices.

18. The Emergency Response Team under Fewins had the policy to shoot-to-kill, not wound or disable.

19. The Emergency Response Team under Fewins had the policy to shoot-to-kill a private citizen in his own house who refused a request to surrender.

20. The Emergency Response Team under Fewins had a custom and practice to "cover up" the facts of ERT operations by altering normal radio communication in such a way as to prevent the recording of events.

21. The Emergency Response Team under Fewins had a policy to conduct

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

warrantless searches, warrantless seizures, and warrantless entries of private residences.

22. The Emergency Response Team under Fewins was unprofessional, untrained in modern law enforcement methods, and unskilled in stand-off situations, and those deficiencies were the ERT's and Fewins' official operational policy.

23. The Emergency Response Team under Fewins' command had an official policy to prevent rescue of suicidal individuals by mental health personnel and/or by family members.

24. As a direct result of the unreasonable, unconstitutional, and illegal customs, policies and actions of the ERT as commanded by Defendant Fewins, Craig Carlson suffered an unnecessary injury and death throughout the incident between 10:07 p.m. and 9:20 a.m.:

    a. Carlson was surrounded and cut off as of 10:07 p.m. on November 10;

    b. Carlson's requests for help from officers he knew, as well as from his family, were rejected and prevented by ERT personnel;

    c. The ERT personnel and Fewins had actual knowledge that Craig Carlson was suffering an incident of mental illness, was suicidal, and had actual knowledge that Craig Carlson might try to provoke a "suicide by cop";

    d. By 11:30 p.m. on November 9, Carlson's mother, father, and brother had arrived at the scene and remained on the scene;

    e. Carlson's family begged to be allowed to enter the residence and

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

rescue Craig;

  f. The ERT negotiator and Fewins personally denied the family's request to rescue Craig;

  g. The family was sequestered in their vehicle down the road from the house, and was prevented from making private telephone calls to Craig;

  h. The ERT refused to call local mental health and medical health officials to assist Craig Carlson;

  i. At 3:00 a.m. on November 10, the ERT negotiator ceased phone contact with Craig Carlson and never spoke to him again;

  j. Between 4:00 a.m. and 5:00 a.m., ERT personnel, without warrant or provocation, launched 14 gas rockets at the Carlson home, breaking windows and damaging the exterior and interior of the house;

  k. Between 6:00 a.m. and 6:30 a.m., ERT personnel, without warrant or provocation, launched another gas rocket assault on the Carlson house, including 14 or 15 rockets, which damaged the exterior and interior of the house;

  l. At 7:24 a.m. on the morning of November 10, the radio record of the ERT activities abruptly went silent;

  m. Subsequent to 7:24 a.m. on November 10, officers surrounding the house yelled back and forth at Carlson, causing Carlson to become agitated;

  n. Craig Carlson asked numerous times to speak to the local newspaper and local television;

  o. Shortly before he was killed, Craig Carlson stated that he

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

7

intended to file civil suit against law enforcement personnel for the damage done to his house by the rocket attacks: "I'm going to sue you."

25. Between 7:24 a.m. and 9:20 a.m., when Carlson was killed, the Emergency Response Team commanded by Fewins altered normal communication protocol, including:

    a. Minute-to-minute reports of activities logged by "911" were abruptly stopped at 7:24 a.m.;

    b. The official negotiator did not keep contemporaneous notes of the incident – an extraordinary departure from protocol;

    c. There was a gap of approximately 5 hours in the radio log, which an investigating State Police Trooper would later describe as "confusing";

    d. The official communication log of the Carlson incident was "reactivated" at 12:19 p.m. on November 10, and then closed;

    e. The official communication log of the Carlson incident was "reactivated" again for second time, on November 12, 2007, for a space of 3 minutes and then was closed again, by unknown person(s) for unknown reason(s);

    f. After the killing of Craig Carlson, Defendant Fewins and Grand Traverse County intentionally refused to disclose public documents, and violated the State Freedom of Information Act;

    g. Despite the fact that Plaintiff filed a State lawsuit under the Freedom of Information Act to attempt to obtain information that had been

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company
LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

withheld by Grand Traverse County law enforcement, and took numerous depositions of the involved law enforcement officials, no explanation has ever been offered for the "reactivation" of the official log for 3 minutes on November 12, 2007;

  h. Defendants, or those acting on their behalf, destroyed evidence, including personal effects of Craig Carlson, that were material forensic evidence.

26. At 9:20 a.m. on November 10, snipers and entry team members of the ERT gathered near the front entrance of the Carlson residence.

27. One of the snipers acting under Fewins's command, Grand Traverse County Deputy Sheriff Jetter, had a high powered scope capable of observing minute detail on and about Craig Carlson's person.

28. Craig Carlson was inside his home, holding a gun, which was visibly on "safe".

29. Craig Carlson's finger was not on the trigger of the gun.

30. No command to shoot Craig Carlson was given.

31. No command to shoot to kill Craig Carlson was given.

32. At least 5 law enforcement officers stationed within earshot of Carlson heard no threat by Carlson.

33. Prior to killing Carlson, he was given no warning by any law enforcement agent of an impending shoot-to-kill shot.

34. There were no exigent circumstances requiring the killing of Craig

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

Carlson at 9:20 a.m. on November 10, 2007:

    a.    The ERT team had evacuated the only nearby residences and blocked off the rural road in front of the Carlson residence;

    b.    Carlson was not a flight risk, and made no attempt to leave his residence during the 13 hours prior to his death;

    c.    Carlson neither committed nor attempted any crime or misdemeanor in the 13 hours prior to his death;

    d.    Since the single, random "loud bang" approximately 11 hours before, Carlson had not discharged a gun.

    e.    Eight officers within earshot of Carlson immediately before his death later stated that Carlson made several requests for access to local news media and stated that Carlson intended to file civil lawsuits against the officers for damaging his property.

35.    Pursuant to the policy of the Emergency Response Team under Fewins' command, snipers were authorized to shoot and kill citizens if they did not surrender.

36.    At 9:20 a.m. on November 10, 2007, Deputy Jetter shot Craig Carlson one time through the head, killing him instantly, while Carlson stood inside his living room.

37.    Carlson's mother, father, and brother heard the shot.

## COUNT 1: EXCESSIVE FORCE

38.    Plaintiff reiterates paragraphs 1-37 by reference, as if completely

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

Law Office
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

restated herein.

39. Defendant Fewins was at the scene of the Carlson incident and commanded the ERT.

40. Acting under color of state law, and pursuant to an unconstitutional shoot-to-kill policy, Defendants used excessive deadly force in the course of the Carlson incident:

    a. Craig Carlson was shot and killed for failing to surrender;

    b. Carlson was not warned before the deadly shot;

    c. Carlson was in his own home;

    d. Carlson had the constitutional right to bear arms in his own home;

    e. Carlson had the right to reasonably resist illegal arrest in his own home;

    f. Carlson was not threatening deadly harm to law enforcement officers at the time he was shot and killed;

    g. There was no exigent circumstance to justify killing Carlson at 9:20 a.m. on November 10, 2007;

    h. The Carlson incident could have been handled otherwise, and, if necessary, Carlson could have been assisted by mental health professionals or disabled to end the incident, without death;

    i. Defendants had a policy to authorize officers to shoot-to-kill if a citizen refused to surrender;

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

j.      No clear demand for surrender is documented in the law enforcement file regarding the Carlson incident;

k.      It is unconstitutional to authorize a low-level sniper to shoot-to-kill without direct order, without supervision and without first taking lesser available non-lethal steps to end the stand-off.

41.     Craig Carlson was unnecessarily and avoidably killed pursuant to official shoot-to-kill policy of Defendant Fewins, acting individually and officially as the law enforcement policy-maker for Grand Traverse County, and the ERT and Grand Traverse County deputy under his command.

42.     The unlawful shooting death of Craig Carlson violated 42 U.S.C. 1983 and was objectively unreasonable and violated Carlson's clearly established constitutional rights under the Fourth Amendment to the United States Constitution, and was a direct and proximate result of Defendants' conduct.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in favor of the Estate of Craig Carlson, and against the Defendants, in an amount to fully and fairly compensate all interested members of the Estate for pain, suffering, death, and loss. Furthermore, Plaintiff requests attorney fees, costs, and punitive damages, as well as such other remedy as the Court deems just, including declaratory judgment that the shot-to-kill policy of Defendants is illegal and unconstitutional.

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

12

## COUNT 2: WARRANTLESS ILLEGAL SEARCH, SEIZURE, and ENTRY

43. Plaintiff reiterates paragraphs 1-42 by reference, as if completely restated herein.

44. Defendants did not have reason to surround, seize, enter and damage Craig Carlson's home and subject Carlson to mental stress and injury during the night of November 9-10, 2007.

45. Defendants never obtained a warrant to seize or enter the Carlson residence with 24 or more gas rockets, a throw phone, and a fatal bullet.

46. There was no exigent circumstance to excuse Defendants' constitutional requirement to obtain a warrant before conducting the activities inside and around the Carlson residence.

47. Craig Carlson had the constitutional right to bear arms in his own home, and his bearing arms did not constitute grounds to surround, seize, and enter his home.

48. Craig Carlson's constitutional rights under the Fourth Amendment to the United States Constitution were clearly established: the right to bear arms in his own home; the right to be free from warrantless search and seizure absent exigent circumstances; the right to be free from excessive force and harassment.

49. During the night of November 9-10, 2007, Craig Carlson was subjected to stress, mental injury, and emotional turmoil created by the Defendants' conduct.

50. The Defendants' conduct goaded and agitated Carlson until he presented himself as a target to police snipers in his own home.

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

13

51. Even prior to death, Craig Carlson was injured for a period of hours as a direct and proximate result of Defendants' conduct.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in favor of the Estate of Craig Carlson, and against the Defendants, in an amount to fully and fairly compensate all interested members of the Estate for pain, suffering, death, and loss. Furthermore, Plaintiff requests attorney fees, costs, and punitive damages, as well as such other remedy as the Court deems just, including declaratory judgment that the search, seizure, and entry policies of Defendants are illegal and unconstitutional.

### COUNT 3: PREVENTION OF RESCUE

52. Plaintiff reiterates paragraphs 1-51 by reference, as if completely restated herein.

53. Craig Carlson called "911" to request help for mental health problems.

54. The family of Craig Carlson assisted law enforcement officials to understand that Craig needed help and was a threat to himself, not to the law enforcement officials.

55. Craig Carlson was suicidal, and, if left to his own devices, his family would have likely saved him without harm.

56. The family was ready, willing and able to save Craig Carlson.

57. The family of Craig Carlson were at the scene of the Carlson incident and offered to rescue Craig.

58. Law enforcement officials, including but not limited to Defendant

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE
(231) 929 3113
(231) 929 3036 fax
520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

Fewins, prevented the family from rescuing Craig Carlson.

59.    The Defendants, including but not limited to Defendant Fewins, had a policy to prevent assistance by family and mental health professionals in suicide stand-off situations.

60.    The family and Craig Carlson were injured as a direct and proximate result of the Defendants' conduct.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in favor of the Estate of Craig Carlson, and against the Defendants, in an amount to fully and fairly compensate all interested members of the Estate for pain, suffering, death, and loss. Furthermore, Plaintiff requests attorney fees, costs, and punitive damages, as well as such other remedy as the Court deems just.

Date: October 21, 2008

/s/ Grant W. Parsons
Grant W. Parsons
Parsons Ringsmuth Zelenock PLC
Attorneys for Plaintiffs
520 S. Union, P.O. Box 1710
Traverse City MI 49685-1710
(231) 929-3113
info@parsonsringsmuth.com
P38214

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE

(231) 929 3113
(231) 929 3036 fax

520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710

## Jury Demand

Now comes the Plaintiff and demands a jury trial of this civil action.

Date: October 21, 2008

                                          Grant W. Parsons
                                          Parsons Ringsmuth PLC
                                          Attorneys for Plaintiffs
                                          520 S. Union, P.O. Box 1710
                                          Traverse City MI  49685-1710
                                          (231) 929-3113
                                          info@parsonsringsmuth.com
                                          P38214

PARSONS
RINGSMUTH
ZELENOCK
Professional Limited Liability Company

LAW OFFICE

(231) 929 3113
(231) 929 3036 fax

520 S. Union Street
P.O. Box 1710
Traverse City, MI
49685-1710