UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
* * * * * * * * * * * * * * * * * * * *

ROBERT CARLSON, Personal
Representative of the ESTATE OF
CRAIG CARLSON,

        Plaintiff,

                              HON. PAUL MALONEY.
                              CHIEF U.S. DISTRICT COURT JUDGE

v

                              FILE NO. 1:08-CV-991

SHERIFF SCOTT FEWINS, individually and
Officially, and GRAND TRAVERSE COUNTY.

        Defendants,
_____/

| Grant Parsons (P38214) | Christopher K. Cooke (P35034) |
|---|---|
| PARSONS LAW FIRM, PLC | NEUMANN LAW GROUP |
| Attorney for Plaintiff | Attorney for Defendants |
| 520 S. Union Street P.O. Box 1710 | 300 Front Street, STE 460 |
| Traverse City, MI 49685-1710 | Traverse City, MI 49684 |
| (231) 929-3113 | (231) 221-0052 |

_____/

### DEFENDANTS' MOTION IN LIMINE TO STRIKE PLAINTIFF'S EXPERT ERNEST BURWELL OR, IN THE ALTERNATIVE, TO LIMIT HIS TESTIMONY TO THE RELEVANT ISSUES

**NOW COMES THE DEFENDANT, GRAND TRAVERSE COUNTY,** by and through its attorneys of record, NEUMANN LAW GROUP, and hereby submits its motion to strike the testimony of Plaintiff's expert, Ernest Burwell or, in the alternative, limit his testimony to the relevant issues and in support, thereof states as follows:

1. This Court allowed Plaintiff Estate to endorse a new expert witness on Police Procedures after this case had been remanded by the Sixth Circuit Court of Appeals. (DKT 335) The remaining issues in the case pertain to command decisions made by Sheriff Fewins, the incident commander at the scene, to use tear gas and a throw phone without first obtaining a warrant.

2. Plaintiff substituted Ernest Burwell, a retired deputy sheriff and dog handler for the Los Angeles County Sheriff's Department as their new expert. (Exhibit 1, resume of Ernest Burwell)

3. Burwell is not qualified to testify to the relevant issues in the case pursuant to FRE 702.

4. Burwell had no law enforcement education before joining the force in 1977. (deposition testimony of Ernest Burwell, March 1, 2017; Exhibit 3 at p. 5)

5. He has no formal degrees (Ex. 3 at p.6)

6. Burwell took one 16 week basic training academy and received POST certification. (Exhibit 3 at p. 7). This allowed him to be a certified officer in California.

7. He was assigned to the jail, did a stint in narcotics and then was assigned to the Lynwood Sheriff's Station as a patrol officer. He worked auto theft and burglary before being transferred to the Gorman Sheriff Station to train as a canine handler. (Exhibit 3, p. 9,10).

8. Burwell spent the rest of his career as a canine handler. He worked dogs looking for high risk suspects and was assigned to a SWAT detail. (Exhibit 3, p. 13)

9. Burwell was a member of the SWAT team but never commanded a SWAT deployment. (Exhibit 3 at p. 45, 63)

10. Mr. Burwell never held any command post. (Exhibit 3 at p. 46)

11. He was never the commander of the Canine Department. (Exhibit 3 at p. 46)

12. He did not progress beyond the rank of Corporal. He tested to become a sergeant but did not make it. (Exhibit 3 at p. 46)

13. Of the claimed 500 SWAT deployments on his resume he was never in charge of a scene. (Exhibit 3 at p. 49)

14. Mr. Burwell would have to rise from Corporal to Sergeant to Lieutenant to Captain to Commander in Chief to command a SWAT deployment. (Exhibit 3 at p. 50).

15. He never took any courses or had specialized training in Command and Control, either at the L.A. County SWAT school or with the National Tactical Officers Association, although he includes documents from these organizations in his materials. (Exhibit 2, written report of Burwell, 8/23/2016, at p.2, Exhibit 3 at p. 52).

16. He has had no training as a Hostage Negotiator. (Exhibit 3 at p. 65).

17. Burwell could not name any case where he has been qualified by a state or Federal Court to render an expert opinion on the command or control of a SWAT team. (Exhibit 3 at p. 76).

18. Burwell has never ordered the use of tear gas or a throw phone. (Exhibit 3 at p. 78)

19. Burwell has never been responsible for obtaining warrants at SWAT calls. (Exhibit 3 at p. 172)

20. Before rendering his opinion, Burwell did not review any deposition or trial transcripts. (Exhibit 2 at p. 2, Exhibit 3 at p. 87, 88).

21. Mr. Burwell have the affidavit and report filed by the prior expert, James Metts included in the documents he has reviewed. (Exhibit 2, at p. 2)

22. Burwell did not listen to the 911 taped calls by Carlson's brother and sister. He did not read the trial testimony of Deputy Hamilton (or any sworn testimony for that matter). Ex. 3 at p. 93

23. Burwell claims that Grand Traverse County has trained Community Mental Health negotiators who respond to barricaded standoffs. When asked where he got this information he pointed to Plaintiff's counsel. He then admitted that he does not know if the state of Michigan has such individuals and if they exist, how they are trained or what their role might be. Apparently LA County SWAT has such professionals. (Exhibit 3 at p. 94-98, 186)

24. Burwell claims that Carlson's mental health treaters should have been "activated" but doesn't know who they are, if they would have come or if Carlson had walked away from mental health treatment several weeks before the incident. (Exhibit 3 at p. 102).

25. Burwell did not read Robert Carlson's trial testimony. He has no idea how Carlson's sister got the information that Carlson wanted to commit "suicide by cop." (Exhibit 3 at p. 104)

26. He did not read any of the trial testimony from the first arriving officers or any of the officers on the scene. (Exhibit 3 at p. 107)

27. Burwell claims there were no exigent circumstances when Carlson fired a shot out the back door. He agrees there was an imminent threat when Carlson tried to lure officers in the house to provoke a shooting. He testified that it was an "exceedingly dangerous situation" but not an "exigent circumstance." (Exhibit 3 at p. 115-119).

28. Burwell testified that the exigency diminished because one of the paramedics went home. He doesn't know if the paramedic asked permission or was replaced by Command. (Exhibit 3 at p. 121-123)

29. Burwell testified that the situation was no longer exigent when Carlson appeared in the window the next morning holding weapons and threatening to sue the police. (Exhibit 3 at p. 125, 126). He doesn't know if this happened after the first round or second round of tear gas was deployed. (Exhibit 3 at p. 127).

30. Burwell has no training in psychiatry or psychology. (Exhibit 3 at p. 126)

31. Burwell testified that he believes that the officers at the scene were just "waiting to get a round off." He testified that Sheriff Fewins and Sargent Drzwiecki ordered Deputy Jetter to shoot Carlson. He doesn't care what the jury said because "I'm the expert in this case." He testified that "they were tired and wanted to end it"; "they blew his head off" and "he wasn't pointing a rifle at nobody" and he was "executed". (Exhibit 3 at p. 135, 136, 138).

32. Burwell did not know what the police negotiator did at the scene and has not read Sargent Ayling's testimony (Exhibit 3 at p. 139).

33. Burwell is not familiar with Michigan 6th Circuit law other than O'Brien v. City of Grand Rapids. Has not read Bing v. Whitehall, Causey v. Bay City, Dickerson v.

McClellan, Hancock or the relevant law in his own district, Fisher v. San Jose. He has no way to look up or research Michigan law and has had no training on it. He has not reviewed any of the opinions issued by this Court. (Exhibit 3 at p. 156 -159).

34. Burwell doesn't know where he got the information that Sheriff Wakefield would have requested a warrant. Thinks he may have just adopted Metts' statement from his report. (Exhibit 3 at p. 176).

35. Burwell left the LA County Sheriff's Office under unusual circumstances. He was involved in a number of lawsuits involving the canine handlers. A witness in the Mellen v. LA County case, James Stadler, claimed Burwell told him to lie in court. He filed a lawsuit against the department in 2004 claiming retaliation. He was placed on administrative leave for 2.5 years. He retired when he was called back to work in the narcotics bureau because they were trying to get him killed. He will not produce his employment file because it is "irrelevant." (Exhibit 3 at p. 30 -44, 194).

36. The testimony of Mr. Burwell is in direct contravention to the mandates of FRE 702 because:

    a. He has no specialized knowledge or training that would make his testimony helpful to the jury.
    b. He has not made himself familiar with the state of the law in the 6th Circuit at the time command decisions were made.
    c. He has never commanded a swat deployment or called for tactics such as tear gas or a throw phone.

d. Burwell has not familiarized himself with the sworn record in the case and directly contradicts the findings of the jury which are now "law of the case".

e. Burwell relies solely on his opinion as "ipse dixit". Any opinions he has to offer will not assist the trier of fact in deciding any of the relevant issues.

f. He is not qualified as an expert witness to address the issues that Metts testified upon, ie: proper police procedures at an armed standoff, particularly as it pertains to the perceived need to obtain warrants.

g. Despite the fact that the record in this matter is highly developed, a jury trial having been conducted, his testimony is not based on sufficient facts or data contained in the record.

h. Burwell's testimony is based on speculation and conjecture and his propensity to unsolicited outbursts of prejudicial statements will inflame the jury so that a fair trial will not be had.

Alternatively, Burwell's testimony should be constrained to the relevant issues remaining to be litigated in the case, ie: whether the original exigency that supported the surrounding of Carlson's home by law enforcement ever "waned" to a degree that a warrant was required from a magistrate before two rounds of tear gas and a throw phone were used in an effort to peaceably resolve the standoff.

November 15, 2017                    Respectfully,

                                     /s/ Christopher K. Cooke
                                     Christopher K. Cooke  (P35034)

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * *

ROBERT CARLSON, Personal
Representative of the ESTATE OF
CRAIG CARLSON,

    Plaintiff,       HON. PAUL MALONEY.
               CHIEF U.S. DISTRICT COURT JUDGE

v

               FILE NO. 1:08-CV-991

SHERIFF SCOTT FEWINS, individually and
Officially, and GRAND TRAVERSE COUNTY.
    Defendants,
_____/

Grant Parsons (P38214)      Christopher K. Cooke (P35034)
PARSONS LAW FIRM, PLC     NEUMANN LAW GROUP
Attorney for Plaintiff       Attorney for Defendants
520 S. Union Street P.O. Box 1710  300 Front Street, STE 460
Traverse City, MI 49685-1710   Traverse City, MI 49684
(231) 929-3113         (231) 221-0052
_____/

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO STRIKE PLAINTIFF'S EXPERT ERNEST BURWELL OR, IN THE ALTERNATIVE, TO LIMIT HIS TESTIMONY TO THE RELEVANT ISSUES**

**ORAL ARGUMENT REQUESTED**

**NOW COMES THE DEFENDANT, GRAND TRAVERSE COUNTY,** by and through its attorneys of

record, NEUMANN LAW GROUP, and hereby submits its brief in support of motion to strike the

testimony of Plaintiff's expert, Ernest Burwell or, in the alternative, limit his testimony to the relevant issues and in support, thereof states as follows:

## I. BURWELL IS NOT QUALIFED TO TESTIFY AS TO THE CENTRAL REMAINING ISSUES IN THE CASE PURSUANT TO FRE 702.

### A. Expert testimony is first subject to the gate-keeping role of the Court.

In order to give expert testimony, the proposed witness must be competent not merely to testify, but to testify as an expert. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) (The Court must ensure that expert testimony is not only relevant, but reliable); *Kumho Tire Co. v. Carmichael,* (526 U.S. 137, 147 (1999)(A trial court's gatekeeping function under Rule 702 applies to all expert testimony.). Accordingly, proferred "expert testimony is not admissible unless it will be helpful to the fact finder." *Zuzula v. ABB Power T&D Co.,* 267 F. Supp. 2d 703, 712 (E.D. Mich. 2003).

Nothing in the Federal Rules of Evidence requires a court to admit opinion evidence which is connected to existing data only by the "ipse dixit" of the expert. *Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 959 F.2d 1349, 1360 (6th Cir. 1992) (A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.) Therefore, expert testimony supported by assertions made on authority but not proved are inadmissible. *Kumho Tire Co., supra* at 157.

Before permitting expert testimony, a trial court must ascertain with some specificity the range of the expert's qualifications and permit testimony only within that range. *De Jager Constr.,Inc. v. Schleininger,* 938 F. Supp. 446, 449 (W.D. Mich. 1996) (The proponent of expert

testimony is obliged to demonstrate the facets of the witness' background that makes his knowledge "specialized," that is, beyond the scope of the ordinary juror.)  This general rule regarding experts was explained in Wigmore on Evidence § 555, at 634 (3d ed 1940 & Supp 1979):

> It follows that there are no fixed classes of expert persons, in which a witness finds himself and remains permanently.  A person may be sufficiently skilled upon one question, and totally unskilled upon the next…Since experiential capacity is always relative to the matter in hand, the witness may, from question to question, enter or leave the class of persons fitted to answer, and the distinction depends on the kind of subject primarily, not on the kind of person.

See also ***McLean v. 988011 Ontario, Ltd.,*** 224 F.3d 797, 800-01 (6th Cir. 2000) ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (*quoting* ***Pomella v. Regency Coach Lines, Ltd,*** 899F.Supp.335, 342 (E.D. Mich. 1995)); ***DeMerrell v. City of Cheboygan,*** 206 Fed. Appx. 418 (6th Cir. 2006) (expert's opinion that contradicts uncontroverted facts is inadmissible).

The party proffering the expert bears the burden of persuading the trial court that the expert has specialized knowledge that will aid the fact finder in understanding the evidence or determining a fact at issue.  ***Nelson v. Tennessee Gas Pipeline Co.,*** 243 F.3d 244, 251 (6th Cir. 2001) (citing ***Daubert,*** *supra* at 592 n.10)(The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of proof); ***Kamp v. FMC Corp.,*** 241 F.Supp. 2d 760, 762 (E.D. Mich. 2002).  Whether to admit or exclude opinion testimony is

committed to the sound discretion of the trial court. *Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir. 1985). Similarly, the decision whether a witness is properly qualified as an expert is within the discretion of the trial court. *Mannino v. International Mfg. Co.,* 650 F.2d 846, 849 (6th Cir. 1981).

In *Berry v. City of Detroit,* 25 F.3d 1342 (6th Cir. 1994), the Sixth Circuit Court of Appeals overturned a jury verdict of six million dollars finding that the verdict was unsupported by the evidence since plaintiff's expert was not qualified to offer an opinion and a proper foundation had not been laid for an opinion on ultimate issues. *Berry* involved a fatal police shooting, wherein, plaintiff alleged that the City pursued a deliberate policy of failing to train or discipline adequately its police officers in the proper use of deadly force, and that failure caused the officer to use deadly force when it was unreasonable and unconstitutional. *Id.* at 1345. The Court of Appeals noted that plaintiff's expert's opinion testimony provided the basis for the jury to determine that the alleged failure of the police department to properly discipline other officers was the proximate cause of the fatal shooting. *Id.* at 1349. However, the Court of Appeals held that plaintiff's expert did not have the qualifications to testify as an expert on this question, and if he did, no proper foundation was laid for his ultimate opinion.

The Court of Appeals noted that although some of the plaintiff's expert's experiences would sound impressive to a jury, that was a vice rather than a virtue. The Court of Appeals began its analysis by pointing out that there exists a difference between scientific and non-scientific expert testimony. *Berry, supra* at 1351. The Court of Appeals illustrated this difference by way of analogy:

[I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical

engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.

On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness if a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his first hand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have. *Id.* at 1350-51.

The Court of Appeals pointed out that in the present case, they were dealing with testimony from a beekeeper with no scientific training. *Id*. The Court stated that for this testimony to be admissible, "a foundation would have to have been laid based upon the witness's firsthand familiarity with disciplining police offers and the effect of lax discipline on the entire force." *Id*. At the heart of the Court of Appeals analysis was the legal principle that the main question surrounding admissibility of the "expert testimony is not the qualification of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question, *Berry, supra* at 1352. The Court noted:

> [t]he key question is not the expert's general qualifications in some field, but whether the precise question on which he will be asked to opine is within his field of expertise...*Id*. Quoting, *United States v. Kozminski,* 821 F2d 1186, 1219-20 (6th Cir. 1988).

The Court of Appeals held that the trial court had erred in admitting plaintiff's expert's testimony as a general policy and procedure expert, since "there is no such 'field' as police policies and practices." *Berry*, *supra* at 1353. The Court of Appeals pointed out that while it is true, any witness, like the hypothetical beekeeper, may be allowed to opine based on observation and experience if a proper foundation is laid; however, here, there was not foundation for discipline testimony, even though it would fall under the general label of "police policies and practices." The Court of Appeals held that no foundation had been properly laid since the plaintiff's expert's credentials as set forth in the record did not qualify him to know more about what effect claimed disciplinary shortcomings would have on the future conduct of 5,000 different police officers than does any member of the jury. *Id*.

**B. Mr. Burwell's credentials do not pass the gate keeper test as it relates to the remaining issues in this case.**

Defendant incorporates by reference the specific facts disclosed during the deposition of Mr. Burwell as set forth in the accompanying motion. Ernest Burwell has no specialized education or training that would make his testimony helpful to the jury. He is unaware of the current state of the law in the 6th Circuit as it pertains to the obligation of an incident commander to obtain a search warrant if the original exigency has abated. He has no legal training, has not studied the law, he is not a certified police officer in Michigan, he has never been in charge of obtaining warrants at a SWAT call out, he has never applied for a warrant in the 6th Circuit. Mr. Burwell has not even made himself knowledgeable in the state of the 9th Circuit law (his home

jurisdiction) regarding barricaded gunmen (*Fisher v. San Jose, 509 F. 3d 952 (2007)*. He is aware of only one case, *O'Brien v. Grand Rapids.*

Ernest Burwell has no field experience or training in Command and Control, obtainment of warrants at SWAT call outs, has never been in a Command position, he has never ordered the use of a throw phone or tear gas. His highest rank in the LACSD was that of corporal. He could not qualify to become a sargent. He has never been qualified as an expert witness in any state or Federal court to analyze control and command decisions at a SWAT callout. In military terms, his opinion is similar to a private telling the general what to do.

Mr. Burwell's resume spells out clearly what his qualifications are. He is a dog-handler and trainer. All of the time he has spent with his former department were either on road patrol or in the canine unit. There is nothing about his background that either establishes specialized knowledge or training that will assist the jury in understanding the evidence or determining a face in issue. ***Zuzula, suopra.***

Although this case is fact intensive, having gone to a nine day trial before this Court and all testimony having been recorded and transcribed, Burwell has not bothered to read any of it. He has read no depositions. He did not even read the deposition testimony of James Metts, the witness he has been endorsed to replace and to whom Burwell has been ordered by this Court to confine his remarks. Of the materials referred to in his report (Exhibit 2 at p. 2), Burwell cannot identify where he obtained his "facts" and at one point openly identified Plaintiff's counsel as his source for information about the availability of mental health professionals that can be "called out" to a barricaded standoff. ((Exhibit 3 at p. 94-98, 186).

Burwell also openly contradicts facts that have been litigated before the jury and decided favorably for the defendants. Further, his unsupported, unsolicited and inflammatory statements are nothing less than shocking.

Fewins and Drzwiecki ordered Jetter to shoot Carlson.

"they were waiting to get a round off"

"they were tired and wanted to end it"

"he wasn't pointing the rifle at nobody"

"they blew his head off"

Carlson "was executed." (Exhibit 3, pps. 135, 136)

Burwell's own testimony establishes the he believes that, in a Federal Court, he can simply ignore facts, data, sworn testimony and the findings of the jury and introduce testimony that is pure "ipse dixit" (it's true because I said it):

**"I don't care what the jury said, I'm the expert in this case."** (Exhibit 3 at p. 136).

## II. ALTERNATIVELY, BURWELL'S TESTIMONY SHOULD BE LIMITED TO THE ISSUES IN QUESTION UNDER PENALTY OF SANCTION.

Defendant Grand Traverse County believes there is no way to cure the absolute lack of foundation for Burwell's testimony and his abject failure to collect and reference any facts or data that is replete in the record before rendering his opinions. Further, based on his demonstrated attitude of simply blurting our inflammatory, unsolicited statements there is no way to realistically keep him on track. The danger of mistrial with this type of a witness is

high. Given all this, should the Court allow Burwell to testify, the Court should order Burwell to testify specifically as to the above enumerated issues that still remain before the Court. There should be a heavy sanction wielded by the Court to prevent Burwell or Plaintiff's counsel from challenging the jury's findings based on facts and law that has been appealed and upheld by the Sixth Circuit.

**Prayer for Relief**

Wherefore, Defendant Grand Traverse County, hereby, requests this Court to strike and suppress the testimony of Plaintiff's Expert Ernest Burwell. Alternatively, if the Court believes Burwell has the requisite foundation to testify before the jury, that his testimony be limited to only those factual issues that have not been resolved by the trial, subsequent appeals and this Court's recent rulings. In addition, that prohibition should carry serious sanctions if Burwell or Plaintiff's counsel blurt our irrelevant, immaterial or inflammatory remarks that have the potential to mistry the case. Defendant has sought concurrence on this motion and has been refused. (Exhibit 4).

November 15, 2017            Respectfully,

Christopher K. Cooke (P35034)